UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CARA PETTIT and RYAN PETTIT, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 1:14-cv-00531-RLY-DKL |
| | ) | |
| INDIANA DEPARTMENT OF CHILD SERVICES; MARY BETH BONAVENTURA, in her official capacity as director of Ind. Dep't of Child Servs.; GLENN HIPP, individually and in his official capacity as regional director of Dep't of Child Servs.; MARILYN ROBINSON, individually and in her official capacity as a supervisor for Dep't of Child Servs.; ANNETTE M. NEARON, individually and in her official capacity as case manager for Dep't of Child Servs.; RACHEL DISHMAN, individually and in her official capacity as a case manager for Dep't of Child Servs.; and KAREN DENTON, individually and in her official capacity as a case manager for Dep't of Child Servs.; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**ENTRY ON DEFENDANTS' MOTION TO DISMISS**

Plaintiffs, Cara Pettit and her husband, Ryan Pettit, brought suit against

Defendants, Indiana Department of Child Services ("DCS"), Mary Beth Bonaventura,

Glenn Hipp, Marilyn Robinson, Annette M. Nearon, Rachel Dishman, and Karen Denton

(collectively "Defendants"), for violating their Fourteenth Amendment rights and several

1

state tort law claims. The action stems from an allegation made by Mrs. Pettit's ex-husband accusing her of abusing their children and the actions taken by DCS, through its agents, in response to the accusations. Defendants move to dismiss this action pursuant to Federal Rule of Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. For the reasons stated below that motion is **GRANTED**.

**I.    Background**

Mrs. Pettit is the mother of four children with her ex-husband, Mr. Holt, and one child with her current husband, Mr. Pettit. (Complaint ¶ 12). On July 12, 2013, Mrs. Pettit disciplined her child, J.C.H., for hitting his sister, J.G.H., in the face with a book. (*Id.* at ¶ 13). Mr. Holt reported this incident as child abuse to DCS. (*Id.*). Defendant Nearon, a case manager for DCS, visited Plaintiffs' home that same day to investigate the claims. (*Id.* at ¶ 14). On July 16, 2013, DCS filed a Verified Petition Alleging Child in Need of Services for J.G.H. based on the report filed by Nearon. (*Id.* at ¶ 15). The next day the Verified Petition was amended to include Mrs. Pettit's other minor children.[1] (*Id.* at ¶ 16).

On September 16, 2013, the court held a fact-finding hearing. (*Id.* at ¶ 17). It issued its findings and order on September 30, 2013, finding that DCS had proven by a preponderance of the evidence that the four minor children were each a child in need of services ("CHINS") and that the coercive intervention of the court was necessary. (*Id.*).

---

[1] Mrs. Pettit disputes the allegations of abuse made against her and found by the trial court.

2

On December 2, 2013, the court held a dispositional hearing[2] and then issued its Dispositional Orders on December 6, 2013. (*Id.* at ¶ 18). The court ordered the CHINS case for the Plaintiffs' child be concluded and that the Holt children should remain in the care of their father. (*Id.*). The court further ordered services for Mrs. Pettit and the Holt children. (*Id.*). Mrs. Pettit appealed the court's dispositional orders; the orders were affirmed. *See* Court of Appeals Memorandum Decision, *In the Matter of A.H., Jb.H., and Je.H., Children in Need of Services, C.P., v. Indiana Dep't of Child Servs.*, No. 34A05-1401-JC-1 (Ind. Ct. App. June 12, 2014).

    The Pettits allege that Nearon, the DCS case manager, who conducted the initial home visit, and Mr. Holt had an intimate personal relationship during this time that was unknown to them during the dispositional hearing. (*Id.* at ¶ 19). Further, they allege that Nearon and Mr. Holt conspired with each other and one of the Holt minor children to create a CHINS case for Holt to gain custody of his minor children. (*Id.*). Nearon allegedly cited to a series of facts in her report which she knew to be false and committed perjury when she testified. (*Id.* at ¶ 21). The Pettits further allege that Defendant Rachel Dishman, who works with Nearon, failed to take corrective steps to prevent further harm to Mrs. Pettit and that Dishman fabricated allegations against her. (*Id.* at ¶¶ 22-23). Other DCS employees, such as Karen Denton and Marilyn Robinson, also engaged in conduct aimed at harming Mrs. Pettit's relationship with her children. (*Id.* at ¶¶ 32, 36).

---

[2] A dispositional hearing must be held after the court finds that a child is a child in need of services. *See* Ind. Code § 31-34-19-1. The purpose of the hearing is to consider "alternatives for the care, treatment, rehabilitation, or placement of the child", the nature and extent of the participation by a parent, and the financial responsibility of a parent. *See id.*

The Pettits filed this lawsuit on April 8, 2014, alleging that Defendants violated her Fourteenth Amendment right as a parent to the care, custody, companionship, and management of her children. Additionally, the Pettits bring forth several state law claims including, perjury, official misconduct, malicious prosecution, negligence, abuse of process, and intentional infliction of emotional distress. The Pettits seek an award of compensatory and punitive damages, appropriate equitable relief as allowed by 42 U.S.C. § 1983, and an award of attorney's fees and costs. Defendants move to dismiss this action for the lack of jurisdiction due to the Rooker-Feldman doctrine, res judicata, immunity grounds, and failure to state a claim. Because a court may only act if it has subject matter jurisdiction, the court will first consider that argument.

## II.   Standard

In considering a motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, the court must accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences from those allegations in the plaintiffs' favor. *See Transit Exp., Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001). "The district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003).

**III.    Discussion**

The Rooker-Feldman doctrine determines whether the court has subject matter jurisdiction, and thus, it must be the first argument the court considers.  *See Frederiksen v. City of Lockport*, 384 F.3d 437 (7th Cir. 2004); *see also Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996).

**A. The Rooker-Feldman Doctrine**

The Rooker-Feldman doctrine "is based upon recognition of the fact that inferior federal courts generally do not have the power to exercise appellate review over state court decisions." *Garry*, 82 F.3d at 1365.  In other words, "lower federal courts do not have subject matter jurisdiction over claims seeking review of state court judgments." *Long*, 182 F.3d at 554.  "The doctrine applies not only to claims that were actually raised before the state court, but also to claims that are inextricably intertwined with state court determinations." *Id.* (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 n. 16 (1983)).

The Seventh Circuit explains the applicability of the Rooker-Feldman doctrine as follows:

> [T]he fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment.  If the injury alleged resulted from the state court judgment itself, *Rooker-Feldman* directs that the lower federal courts lack jurisdiction. If the injury alleged is distinct from that judgment, i.e., the party maintains an injury apart from the loss in state court and not "inextricably intertwined" with the state judgment, res judicata may apply, but *Rooker-Feldman* does not.

5

*Garry v. Geils*, 82 F.3d 1362, 1365-66 (7th Cir. 1996) (internal quotations and citations omitted). Additionally, the court notes that there is "no bright line that separates a federal claim that is 'inextricably intertwined' with a state court judgment from a claim that is not so intertwined." *Id.* at 1369. Rather, the crucial point is whether "the district court is in essence being called upon to review the state-court decision." *Id.* Additionally, the Seventh Circuit recognizes the distinction between "a federal claim alleging injury caused by a state court judgment and a federal claim alleging a prior injury a state court failed to remedy." *See Long*, 182 F.3d at 555. In assisting with the often difficult distinction, the Seventh Circuit asks whether the injuries are independent of the state court judgment. *See id.* The focus in this case is on whether the alleged injuries are inextricably intertwined with the state court judgment.

### 1. Inextricably Intertwined

Defendants argue that any alleged injury to Plaintiffs is a result of the state court's dispositional order and thus, barred by the Rooker-Feldman doctrine. Plaintiffs, who carry the burden, respond that the case is not about the CHINS action, but about the allegation that "the facts and circumstances presented to the trial court [were] based on perjury and deception." (Filing No. 18-1, at ECF p. 6). According to Plaintiffs, the intentional act to violate their civil rights is in no way connected to the CHINS finding made by the trial court. Defendants reply that the right to a familial relationship and the requested relief would require the court to conclude that there was no valid factual or legal grounds to remove the children from Mrs. Pettit's custody to their father's custody.

The court first notes that "a litigant may not circumvent the effect of the Rooker-Feldman doctrine by casting the complaint in the form of a civil rights action." *Long*, 182 F.3d at 557. Rather, the court must still examine whether such an injury is inextricably intertwined with the state court judgment. To begin its analysis, the court turns to the allegations set forth in the Complaint. Specifically, Mrs. Pettit alleges that she "suffers continuing emotional and physical distress as a result of being consistently harassed and denied her rights by DCS." (Complaint ¶ 40). The only right that Mrs. Pettit asserts is her "fundamental right as a parent to the care, custody, companionship, and management of her children." (*Id.* at ¶ 43). She alleges that this right was violated "by unreasonably removing the children from her custody without compelling reasons." (*Id.* at ¶ 47). Further she alleges that "Defendants intentionally and maliciously continued to perpetuate this violation by denying Mrs. Pettit's attempts at regaining custody of her children without a compelling reason, and after knowing or should have know[n] that Mrs. Pettit never engaged in abuse or neglect of her children." (*Id.*).

The decision to remove Mrs. Pettit's children and place them with their father was enforced due to the court's orders. The impediments to her fundamental right as a parent to the care, custody, and companionship, and management of her children were clearly the effect of the state court's orders. Whether the evidence before the court was fraudulent and untrue is inextricably intertwined with the state court's orders because this court would have to examine the state court's reasoning for removing the children. Furthermore, the removal of her children due to the allegations of abuse are not a separate and distinct prior injury that the state court failed to remedy, because it is an injury

7

caused by the state court's judgment. Therefore, the court finds that the Pettits' Section 1983 claim is inextricably intertwined with the state court judgment.

This does not, however, end the court's analysis. The court must also find that the Plaintiffs had a reasonable opportunity to have such claims heard in state court before the Rooker-Feldman doctrine may bar this claim in this court. *See Long*, 182 F.3d at 558.

### 2. Reasonable Opportunity[3]

The reasonable opportunity inquiry focuses on difficulties caused by factors independent of the actions of the parties that precluded a plaintiff from bringing federal claims in state court, such as state court rules or procedures. *Long,* 182 F.3d at 558 (internal quotation and citation omitted); *see also Taylor v. Fed. Nat. Mortgage Ass'n*, 374 F.3d 529, 534-35 (7th Cir. 2004). Thus, Plaintiffs' argument that such knowledge was not known at the time of the dispositional hearing is irrelevant to this inquiry, which focuses on the process. Pursuant to Indiana Code, Mrs. Pettit had an opportunity to be heard at the fact finding hearing and the dispositional hearing. Ind. Code § 31-34-11-1; Ind. Code § 31-34-19-1.3. Additionally, a parent has the right at both of these hearings to cross-examine witnesses and to introduce witnesses and evidence on behalf of the parent. Ind. Code § 31-32-2-3. Thus, Mrs. Pettit had the opportunity during the state court proceedings to present the claims that the abuse allegations were fabricated even if she did not know that a personal relationship existed between her ex-husband and the caseworker.

---

[3] Although neither party addresses this prong as part of the Rooker-Feldman doctrine, both discuss it as part of their arguments regarding res judicata.

Therefore, the court finds that Plaintiffs had a reasonable opportunity to be heard in the state court proceedings. Thus, the Plaintiffs' claim under Section 1983 is barred by the Rooker-Feldman doctrine and this court, having no subject matter jurisdiction, must dismiss the claim.

### B.     Remaining State Law Claims

The sole basis for federal jurisdiction in this case was Mrs. Pettit's claim that Defendants violated her civil rights. Because the court found such a claim to be barred in this court, the court must determine if it wishes to retain supplemental jurisdiction over the state law claims. A district court may retain supplemental jurisdiction over state law claims even after it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). The court is given broad discretion in determining whether it is appropriate to retain jurisdiction over the state law claims. *See Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 728 (7th Cir. 1998).

Generally, when a district court dismisses all federal law claims before trial, the remaining claims should be left to the state courts. This general rule has three well-recognized exceptions where a district court should retain jurisdiction. In determining whether to retain jurisdiction, "[a] district court . . . should make a finding as to the balance of judicial economy, convenience, fairness and comity to justify retention." *Wright v. Associated Ins. Companies, Inc.*, 29 F.3d 1244, 1252 (7th Cir. 1994). Additionally, a court may retain state-law claims "when substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort." *Id.* at 1251. The court finds that these exceptions are

9

not met here.  As such, the court declines to retain supplemental jurisdiction over the remaining claims in the Complaint.  The remaining claims are therefore dismissed.

## IV. Conclusion

The Pettits' civil rights claim is barred by the Rooker-Feldman doctrine, thus leaving the court without subject matter jurisdiction over such a claim.  The court declines to retain supplemental jurisdiction over the state law claims and, as such, dismisses those claims as well.  Therefore, the court **GRANTS** Defendants' motion to dismiss (Filing No. 12).

**SO ORDERED** this 9th day of January 2015.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.